382 A.2d 520.

VERNON H. HARDY *et al. vs.* THE ZONING BOARD OF REVIEW OF THE TOWN OF COVENTRY.

DECEMBER 19, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

534

PAOLINO, J.   This petition for certiorari was brought to review a judgment entered in the Superior Court affirming a decision of the Zoning Board of Review of the Town of Coventry. The zoning board had dismissed the petitioners' appeal from the issuance by the building inspector of three building permits to the Hickory Ridge Campground, Inc., which proposed to develop a seasonal camping ground on a parcel of land it owned and identified as lot 151 on plat 45. We granted the petition, *Hardy v. Zoning Bd. of Review*, 117 R.I. 902, 360 A.2d 881 (1976), and the writ issued on August 23, 1976.

This controversy has a long history. The petitioners are the owners of various parcels of land in close proximity to lot 151, on which Hickory Ridge Campground is located. This lot was formerly owned by one Franklin Reed, then by the Reverend and Mrs. Vartan Hartunian, and later by the Greater Providence Development Corporation.

On March 15, 1971, the Coventry building inspector issued three permits for the erection of two restroom facilities and one combination restroom and office facility for a campsite for two hundred tents and trailers on lot 151. The building permits were applied for by Franklin C. Reed and the application indicated that Hickory Ridge Campground was the owner of the property. A plat plan was filed with

the building inspector at the time the building permits were issued. At the time the permits were issued the land in question was within an R-R zone, a district zoned for rural residential uses. Under art. II, sec. 3(6) of the zoning ordinance a "Camping area (Seasonal)" was a permitted use in such a district. The plat plan indicated that the facilities would be for a campground containing two hundred campsites on approximately twenty-four and a half acres of land.

The issuance of those building permits has resulted in a lengthy and litigious controversy which in one guise or another has been before this court on at least four previous occasions. It may be helpful to discuss those actions briefly.

On May 11, 1971, Vernon H. and Jacqueline C. Hardy, owners of property abutting the campground, filed an appeal with the Coventry Zoning Board of Review protesting the issuance of the building permits. The appeal carried with it an automatic stop-work order. The Hartunians (then owners of Hickory Ridge) obtained a preliminary injunction in the Superior Court to enjoin the stop-work order on the ground that the Hardy appeal had been filed too late. We granted the Hardys' petition to review that order, *Hartunian v. Matteson*, 108 R.I. 938, 278 A.2d 867 (1971), and subsequently remanded the matter so that the zoning board might make a determination as to the timeliness of the appeal. *Hartunian v. Matteson*, 109 R.I. 509, 288 A.2d 485 (1972).

At about the same time, on May 27, 1971, the town brought an action to enjoin construction of the campground. Various property owners sought to intervene as party plaintiffs but before their motion was heard, and without notice to them, the town and the defendants in that case entered into a consent decree. Nearly a year later the motion to intervene was heard and granted as to some but not all the property owners. Those whose motion to intervene had been granted then moved to vacate the consent decree. This was denied without prejudice and the matter eventually reached this court in a complicated tangle of appeals by all parties. This court finally held that those whose

property actually abutted the campground were entitled to intervene as a matter of right but that the denial of their motion to vacate the consent decree was not a final order and hence not appealable. The matter was remanded to the Superior Court with directions to permit those found to be abutters to intervene on the assumption that the motion to vacate the consent decree would then be removed. *Town of Coventry* v. *Hickory Ridge Campground, Inc.*, 111 R.I. 716, 306 A.2d 824 (1973).

The consent decree was eventually vacated on September 10, 1973, but the abutters subsequently withdrew from the action, the Hardys selling their property to the owners of the campground and another reaching an agreement with the owners. Though still other property owners had sought to intervene, this court affirmed the denial of their motion by the Superior Court on the ground that they were not abutters.[1] *Town of Coventry* v. *Hickory Ridge Campground, Inc.*, 114 R.I. 581, 337 A.2d 233 (1975).

*Hardy* v. *Zoning Bd. of Review*, 113 R.I. 375, 321 A.2d 289 (1974), is a sequel to *Hartunian* v. *Matteson, supra*. On remand, the zoning board found that the Hardys' appeal of May 11, 1971 had been filed more than the prescribed 30 days beyond the March 15 issuance of the permits (art. VI, sec. 5(a) of Coventry Zoning Ordinance) and hence was out of time. The Superior Court affirmed but we reversed and again remanded, this time for a hearing on the merits.

Following that remand, the petitioners' appeal to the zoning board was heard on the merits and was denied and the Superior Court affirmed. The present petition, No. 76-248 M.P., brings before this court the question of the correctness of this decision.[2]

---

[1]It is not clear from the record what, if any, further action has been taken by the town.

[2]As mentioned, the Hardys are no longer parties. The present petitioners are neighboring but not abutting landowners. The present respondents are the members of the zoning board and intervenor Greater Providence Development Corporation, the owner of the campground at the time the appeal was brought.

The hearing in question was held before the zoning board on August 29, 1974, and was confined to the issue of whether or not the 1971 building permits had been lawfully issued by the building inspector. On December 4, 1974, the board met to render its decision and unanimously held that the building permits "were proper and in compliance with all relevant provisions of the Zoning Ordinance of the Town of Coventry."

The petitioners appealed this decision to the Superior Court on February 4, 1975, and moved on May 2, 1975 to have it remanded for inclusion of the board's reasons for its decision. The motion was granted by a justice of the Superior Court and an order was entered on May 19, 1975. On the same day it was stipulated that the Greater Providence Development Corporation might intervene as a party defendant, being at that time the owner of Hickory Ridge Campground. A copy of the board's expanded decision was received by petitioners on June 26, 1975, and incorporated into the amended appeal filed on July 7, 1975.

The expanded decision of the zoning board contains findings that the property in question was located in an R-R zone; that the building permits were issued as accessory uses for a seasonal camping area; that a seasonal camping area was a permitted use in an R-R zone under art. II, sec. 3, para. 6 of the Coventry Zoning Ordinance; that the proposed buildings were incidental or subordinate to the principal use on the premises, namely a seasonal campground; and that an accessory structure in a permitted area is a permitted structure.[3] The decision concludes with the statement that the permits in question were proper and in compliance with all relevant provisions of the zoning ordinance and that petitioners had failed to establish that the building

---

[3]These findings, of course, were based on the plans submitted to the building inspector. As will be noted at the end of this opinion, we are not considering here whether the uses actually being made now at Hickory Ridge are permitted in a seasonal camping area.

inspector erred in issuing the permits. Accordingly the zoning board denied the appeal.

On December 5, 1975, the intervenor, Greater Providence Development Corporation, filed a motion to dismiss petitioners' amended appeal on two grounds: (1) that none of the appellants in the action as it then stood were owners of property abutting the campground and the appellants were therefore without standing to prosecute the appeal; and (2) that the appellants failed to state a claim upon which relief could be granted.

The motion and the appeal were heard by a justice of the Superior Court. He filed a decision on June 3, 1976, finding that appellants had standing as interested and aggrieved parties to bring the action. With respect to the merits of the appeal, however, he held that the record before him sustained the zoning board's decision to affirm the building inspector's issuance of the permits for the ancillary or accessory buildings or structures to support the permitted use of a campground area in an R-R zone. Accordingly he dismissed the appeal and remanded the case to the zoning board. After the entry of judgment embracing the trial justice's decision, petitioners, on June 25, 1976, filed the instant petition for a writ of certiorari seeking a review of that decision and judgment. As stated above we granted the petition on August 5, 1976, and ordered the writ to issue.

Initially, we dispose of the question raised by the intervenor as to petitioners' standing, as non-abutting landowners, to prosecute this action. As noted above, the trial justice found that petitioners were sufficiently aggrieved by the issuance of the building permits to warrant their bringing the appeal and he refused to grant the intervenor's motion to dismiss for lack of standing. The intervenor did not appeal from that ruling and, for obvious reasons, petitioners have not included it among their specifications of errors in the petition for certiorari. The intervenor nonetheless seeks to raise the issue here on certiorari.

In *A.T. & G., Inc. v. Zoning Bd. of Review*, 113 R.I. 458, 322 A.2d 294 (1974), the Superior Court affirmed a zoning board's decision that there had been an illegal enlargement of a nonconforming use. The respondent, A.T. & G., Inc., did not file a petition for a writ of certiorari to review that ruling, but it sought to use petitioners' writ as a vehicle upon which to raise that issue before this court. *Id.* at 461, 322 A.2d at 296. As we pointed out in that case, the only procedure available to one seeking to obtain review of a decision of the Superior Court affirming or reversing a ruling of a local zoning board is to petition this court for the prerogative writ of certiorari and to set forth specifically the error or errors it seeks to have reviewed. We also pointed out that where the court is reviewing a decision of a subordinate tribunal by way of certiorari, that review is limited to the allegations of error which appear in the petition for the writ and that we will depart from the general rule only where a matter of substantial public interest is involved. *Id.* at 462, 322 A.2d at 296.

What we said in that case applies with equal force here. The intervenor having failed to petition for certiorari setting forth the error or errors to be reviewed, the issue of petitioners' standing is not properly before us.

The sole issue in this case, then, is whether the trial justice erred in sustaining the zoning board's decision that the three building permits were lawfully issued to Hickory Ridge Campground, Inc., by the building inspector on March 15, 1971.

The petitioners contend, in substance, that the zoning board, by upholding the issuance of the permits, was in effect permitting the unauthorized operation of a trailer park without a license, in violation of town ordinances; that by this de facto rezoning of part of an R-R area to commercial C-2 status without proper notice and hearings, the board was depriving petitioners of property without due process of law in violation of both Federal and State Constitutions;

and that therefore the issuance of the permits was unlawful and the appeals to the zoning board and subsequently to the Superior Court should not have been denied.

The respondents contend that these are extraneous issues. Their position may be summarized as follows. A seasonal campground is a permitted use in a rural residential district and therefore the building inspector had no other course than to approve permits for buildings that were clearly accessory to the permitted use. They argue that whether the campground is now being used for a trailer park or some other use not contemplated by the zoning ordinance is a question for the town itself, to be handled by the town solicitor, and is not a matter to be prosecuted or enforced by private citizens of the town. In the circumstances, they contend that the trial justice was correct in sustaining the zoning board's denial of petitioners' appeal.

As we have said many times, our review of a decision of a subordinate tribunal by way of certiorari is limited to determining what legal evidence or reasonable inference therefrom supports the tribunal's conclusion. *E.g., Prospecting Unlimited, Inc.* v. *Norberg*, 119 R.I. 116, 124, 376 A.2d 702, 706 (1977). In reviewing the trial justice's decision, then, we do not weigh the evidence. *A.T. & G., Inc.* v. *Zoning Bd of Review*, *supra* at 461, 322 A.2d at 295. Our only concern is whether the trial justice acted within his authority under G.L. 1956 (1970 Reenactment) §45-24-20 in his review of this zoning matter. *Town of E. Greenwich* v. *Day*, 119 R.I. 1, 6, 375 A.2d 953, 956 (1977). As in Prospecting Unlimited, Inc., decided under a statute virtually identical to §45-24-20, we need not determine here whether a Superior Court justice's precise standard of review over zoning boards should be interpreted as "clearly erroneous," "substantial evidence," or "any evidence." Suffice it to say that under any one of these standards, there was sufficient evidence in the record before the trial justice for him to affirm the zoning board's decision that the three

building permits issued on March 15, 1971, to Hickory Ridge Campground were lawfully issued by the building inspector.

The three permits applied for and granted were for the erection of three small buildings on a portion of the land in question. Two of the proposed buildings contained toilet and washing facilities for the campers at the campground; the third contained office space in addition to the restroom facilities.

It is undisputed that a camping area (seasonal) was a permitted use in a rural residential area under the town's ordinance. We noted as far back as *Hardy* v. *Zoning Bd. of Review, supra* at 376, 321 A.2d at 290, that

> "at the time the permits issued the tract in question was within a district zoned for rural residential uses or that at that time under art. II, sec. 3(6), of the ordinance a 'Camping area (Seasonal)' was a permitted use in such a rural residential district."

Nothing in the record suggests that the quoted statment is any less accurate today than it was in 1974, and there can be no doubt that in issuing the three building permits the building inspector, after examining the applications and the plans submitted by applicants, concluded that the land in question was going to be used for a seasonal camping area and that the proposed buildings were going to be used as accessory uses for such seasonal camping area.

Nor can there be any serious contention that toilet and washing facilities are not "accessory" to the permitted use of the area as a campground, within the definition of "accessory use" set forth in the zoning ordinance, art. XI(1), a "use clearly incidental or subordinate to the principal use on the same premises." Toilets are certainly as accessory to a camping area as the storage of petroleum products is to the operation of a gasoline filling station. *Ecro Corp.* v. *Sanford*, 104 R.I. 337, 345, 244 A.2d 265, 270 (1968). The

necessity for such facilities was underlined by Mr. Edgar Steere, Field Office Supervisor for the Rhode Island Department of Health, in testimony at the zoning board hearing:

"Q    Does the Department of Health have an obligation to determine whether or not a license will issue to camps * * * pursuant to 23-21-1 of the General Laws of Rhode Island?

"A    Yes, the Department of Health is required to inspect such facilities and to issue a license for their operation.

"Q    Has the Department of Health issued a license to Hickory Ridge Campground?

"A    Yes, it has.

"Q    Does the Hickory Ridge Campground comply with all the requirements of the Department of Health with respect to the operation of the campground?

"A    Yes, it does.

"Q    Your approval is based upon two criteria, is that correct? One is the camp itself, and two is the sewage disposal systems?

"A    Yes; it's probably three main items. We're concerned with that water supply, sewage disposal, and refuge [sic] disposal.

"Q    But before that camp can operate it has to receive approval not only for its sanitary facilities, but it has to receive approval as a camping area by the state?

"A    Yes."

The record shows that the blueprints for the three accessory buildings were approved by the health department on March 10, 1971, five days before the building permits were issued by the building inspector. Thus, since the record shows (1) that use of the premises as a seasonal camping area was a permitted use under the Coventry Zoning Ordinance, (2) that toilet and washing facilities are "accessory"

to such a camping area, (3) that under health department regulations no camp can be licensed to operate without approved sanitary facilities, and (4) that the health department had inspected the plans for the sanitary facilities and approved them before the building permits were issued, the building inspector had no choice but to issue the permits. That being the case, it appears facially evident that the record contains legally competent evidence to warrant this court's affirmance.

The issues of the allegedly unlawful present use of the campsite and the consequent alleged deprivation of property without due process are extraneous to the present proceedings, as the trial justice concluded. Violations of a zoning ordinance, like those alleged by the petitioners, can be the subject of an action brought by an appropriate party to enforce the ordinance. *See, e.g. Hassle* v. *Zoning Bd. of Review,* 108 R.I. 349. 352. 275 A.2d 646, 648-49 (1971). This case, however, is not such an action. It is simply a petition to contest the lawfulness of the building inspector's issuance of three building permits based on the materials he had before him, and that question alone is properly before us in this review.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record certified to this court is remanded to the Superior Court with our decision endorsed thereon.

*Marion J. Dillon, Francis J. Maguire,* for petitioners.

*Zoglio, Tobin & Corrente, Frederick G. Tobin, Adler, Pollock & Sheehan Incorporateed, Edward L. Maggiacomo, Richard C. DeYoung III* (for Greater Providence Development Corporation-Intervenor), for respondents.